**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

---

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No. 1:26-cv-01898-KWR-DLM

NEW MEXICO SUPREME COURT; and
NEW MEXICO BOARD OF BAR EXAMINERS

Defendants.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS**

THIS MATTER comes before the Court upon Defendant New Mexico Supreme Court's ("NMSC") Motion to Dismiss Plaintiff's Complaint **(Doc. 13)** and the New Mexico Board of Bar Examiner's ("the Board") Motion to Dismiss **(Doc. 14)**, both filed on August 14, 2026. Having reviewed the parties' briefs and applicable law, the Court finds that Defendants' Motions to Dismiss are not well taken and, therefore, are **DENIED**.

**BACKGROUND**

The United States Department of Justice's Civil Rights Division alleges that Defendants have violated federal civil rights law, namely the Servicemembers Civil Relief Act ("SCRA"). 50 U.S.C. § 3901. Among other things, the SCRA attempts to simplify the bar licensing landscape for servicemembers and their spouses. Obtaining a bar license can be arduous and time-consuming. Once one has a bar license, transferring to a new state also can impose serious difficulties. This burden is especially problematic for members of the military, whose jobs frequently require them

and their families to relocate to new states. Congress expressly chose to limit the requirements for transferring a license to a new state to a limited set of eligibility criteria for service members and their spouses. According to the Complaint, Defendants violated the SCRA by denying a military spouse's license despite the fact he met the SCRA's requirements and directly invoked the SCRA as a basis for his transfer. Additionally, the Complaint alleges a broader practice of violations. Responding to Lees invoking the SCRA's requirements during his attempts to obtain a bar license, Defendants asserted that "their position/process has not changed" seemingly as to whether the SCRA applies to them. **Compl. ¶ 47.** Defendants assert they are not required to cooperate with the SCRA.

Congress passed the SCRA to "provide for, strengthen, and expedite the national defense" by allowing servicemembers "to devote their entire energy to the defense needs of the Nation." 50 U.S.C. § 3902(1). Among many other benefits, the SCRA gives servicemembers and military spouses the right to transfer professional licenses between states. 50 U.S.C. § 4025a. The law provides as follows:

> "[i]f a servicemember or the spouse of a servicemember has a covered license and relocates residence because such servicemember receives military orders for military service in a State other than the State of the licensing authority that issued the covered license, such covered license shall be considered valid for the scope of practice in the State of the new residence if such servicemember or spouse submits to the licensing authority of such State an application." *Id.*

Licenses are covered by this section if they meet some basic requirements. Licenses are covered by the statute so long as they are maintained in good standing, have not been revoked, have not been voluntarily surrendered, and there are no pending investigations for unprofessional conduct related to the license. 50 U.S.C. § 4025a(f)(1). The government contends that Defendants have violated the SCRA by denying bar licenses in violation of the SCRA:

> "Defendants have engaged in a pattern or practice of violating the SCRA by refusing to recognize as valid the out-of-state law licenses of qualifying servicemembers and military spouses in accordance with 50 U.S.C. § 4025a . . . Defendants' actions undermine the express purpose of the SCRA, which is to support military readiness and the national defense. Defendants' refusal to comply with federal law has harmed military families, decreased the financial readiness of our Armed Forces, and prevented military spouse attorneys from pursuing employment opportunities in the state of New Mexico." **Compl. ¶¶ 5-6.**

Liam Lees is an attorney. **Compl. ¶ 18**. Lees is married to United States Air Force Major Kaitlyn Shaughnessy. ***Id.*** **¶ 19.** Lees received his legal education abroad and he was also admitted as a licensed attorney in foreign countries. ***Id.*** **¶ 20.** In May 2024, Lees graduated from William and Mary Law School with a Master of Laws (LL.M.) degree. ***Id.*** **¶ 21.** He is now licensed in several states. ***Id.*** **¶¶ 18, 22-24.**

Prior to June 17, 2024, Lees and Shaughnessy moved from Virginia to Las Cruces, New Mexico following her orders "to report for duty at Holloman Air Force Base" by that date. ***Id.*** **¶¶ 27, 28.** In early 2025, Lees was offered employment from the State of New Mexico, Third Judicial District Attorney's Office in Las Cruces to be a trial attorney, contingent on acquiring a law license in New Mexico. ***Id.*** **¶ 29**. Lees was initially denied by the Board for only possessing an LL.M. degree, not a J.D., under New Mexico Bar Admission Rule 15-202. ***Id.*** **¶ 30-31** (quotation modified) ("Rule 15-202 NMRA requires that every applicant for any method of licensure prove that they are a graduate with a juris doctor degree or bachelor of laws and letters degree (but not only a master of laws degree) from a law school that is: (a) formally accredited by the ABA; or (2) not formally accredited by the ABA, in which event the applicant must also show admission to the practice of law in one or more other states for at least four (4) of the six (6) years immediately preceding the application."). The New Mexico Supreme Court ("NMSC") denied Lees' petition seeking a waiver of this decision "without comment by a 3-2 vote." ***Id.*** **¶ 33.** Having been denied

a New Mexico law license, Lees had to take a "law clerk" position with a "significantly lower" salary than his anticipated trial attorney position. ***Id.*** **¶ 35.**

On November 12, 2025, after discovering that the SCRA rules guarantee transfer in his situation, Lees "emailed an application requesting license portability pursuant to Section 4025(a) of the SCRA." ***Id.*** **¶ 37.** This detailed application made his eligibility under the SCRA clear through attached documentation. ***Id.*** The Board responded to Lees by pointing him towards a New Mexico state rule (rather than the SCRA) "which allows military spouse attorneys to apply for a limited license if they meet certain qualifications, including holding a juris doctor or bachelor of laws and letters degree." ***Id.*** **¶ 38.** This New Mexico rule does provide special, lowered requirements governing transfers from other state bars specifically for military and their spouses, but this rule does not provide protections equivalent to the SCRA's. ***Id.*** The Board indicated it would allow Lees to apply but that he "may not qualify based on [the New Mexico rules]" and that his "application fee is non-refundable." ***Id.*** **¶ 39.** On November 17, 2025, Lees submitted an application. ***Id.*** **¶ 40.** In his application, Lees "was required to submit documentation not included in Section 4025a of the SCRA, including transcripts, test scores, and references, and was required to pay non-refundable fees for the application and a character and fitness investigation." ***Id.*** **¶ 41.** Even after this, the Board told Lees his application was not "complete" as Lees did not hold a juris doctor or bachelor of laws and letters degree." ***Id.*** **¶ 42**. The Board did not submit Lees' application to the NMSC. ***Id.*** **¶ 43.**

Federal civil rights authorities took note of this problem. The Assistant Attorney General for the Civil Rights Division of the United States Department of Justice sent letters to states ensuring they understood the requirements of the SCRA and that denying military servicemembers or military spouses bar license transfers may violate federal law. **Compl. ¶ 45;** *see New Law on*

*Attorney License Portability for Servicemembers and Their Spouses,* Letter from U.S. DOJ to State Bar and Court Systems that Issue Licenses to Practice Law.[1] On January 2, 2026, Lees emailed the Board asking if the AAG's letter would make the Board change its position about complying with the SCRA. ***Id.* ¶ 46.** A few days later, the Board "responded by stating that the Board had received a copy of 'this letter when it was sent by the DOJ' but 'at this time, their position/process has not changed.'" ***Id.* ¶ 47.** So, Lees emailed the NMSC directly to which he received an "email stating that it 'may not consider ex parte communications concerning pending or impending matters.'" ***Id.* ¶ 49.**

After the First Assistant United States Attorney for the District of New Mexico sent a letter explaining the SCRA requirements, Defendants declined to retract their position that they did not have to comply. ***Id.* ¶ 51.** On February 17, 2026, Lees tried a final time to get Defendants to acknowledge that the SCRA imposed limits on their ability to deny a bar license based solely on state law that offers less protection of military spouses than the SCRA. ***Id.* ¶ 52, 54.** Failing to submit Lees' application to the NMSC, the Board sent Lees a letter contending the following:

> "[t]he federal law you cite, 50 U.S.C. § 4025a applies to 'licensing authorities' . . . The New Mexico Board of Bar Examiners does not fall within this definition. . . The Board is not 'authorized to issue licenses.' Law licenses in New Mexico are not issued or regulated by any board, commission, department or agency. Instead, the New Mexico Supreme Court has to [sic] ultimate authority to decide whether to grant or withhold an admission to practice law in the State." **Compl. ¶ 54.**

Next, NMSC agreed with the Board's position in a letter sent directly to the Civil Rights Division and the United States Attorney's Office "suggesting that the [NMSC] was not covered by the SCRA." ***Id.* ¶ 55.**

---

[1] https://www.justice.gov/servicemembers/media/1421596/dl?inline

In response, the United States filed this lawsuit on June 11, 2026, contending that Defendants violated Section 4025(a) by failing to recognize "covered licenses of servicemembers who relocated to New Mexico," rejecting these applications, and failing to allow for an application process that complies with the SCRA. ***Id.*** **¶ 62.** The government contends that New Mexico's state rules for bar admission unlawfully exceed that of the SCRA, including by not recognizing LL.M.s and by requiring a character and fitness process that exceeds the minimal background check permitted by the SCRA. ***Id.*** **¶¶ 63-68.** The New Mexico rules may exceed those allowed for by the SCRA in a multitude of ways that are too extensive to reproduce in the body of this Opinion.[2]

[2] "Under New Mexico's Rules Governing Admission to the Bar, a military spouse must satisfy requirements beyond those listed in the SCRA, such as: (1) having graduated with a juris doctor or bachelor of laws and letters degree (but not only a masters of law degree) from a law school that is (a) formally accredited by the ABA; or (b) not formally accredited by the ABA, in which event the applicant must also show admission to the practice of law in one or more other states for at least two (2) of the four (4) years immediately preceding submission of an application. Rules 15-306(C)(1) and 15-202(A)(2); (2) being in compliance with all child support and spousal support obligations imposed under a judgment and order of support. Rules 15-306(C)(1) and 15 202(A)(4); (3) providing a certificate of good standing for every state in which the applicant has ever been admitted to practice law. Rules 15-306(C)(1) and 15-202(A)(3); (4) having achieved a scaled score of eighty (80) or higher on the Multistate Professional Responsibility Examination. Rule 15-306(C)(4); (5) submitting a signed certificate of understanding attesting that the applicant has read and is familiar with the Creed of Professionalism of the State Bar of New Mexico and various practice-related rules and statutes. Rules 15-306(C)(1) and 15-202(A)(5); (6) providing a properly authenticated law school transcript. Rule 15-203(C)(1); (7) completing a law school certification form. Rule 15-203(C)(2); (8) providing character and fitness statements from three (3) actively licensed attorneys certifying that the applicant is a person of good moral character and physically and mentally qualified for admission. Rule 15-203(C)(4); (9) submitting evidence of attendance at, and successful completion of, a course approved by the Board or Supreme Court, which shall include Indian law, New Mexico community property law, and professionalism. Rule 15-203(E); and (10) proving the applicant is qualified, has good moral character, and is fit to practice law by submitting to a character and fitness examination. Rules 15 306(D) and 15-205 . . . Under Rule 15-205 NMRA, New Mexico's character and fitness examination requires military spouses to inform the Board of their history regarding the following: (1) unlawful conduct; (2) academic misconduct; (3) misconduct in employment; (4) acts involving dishonesty, fraud, deceit, or misrepresentation; (5) acts which demonstrate disregard for the rights or welfare of others; (6) abuse of legal process, including the filing of vexatious or frivolous lawsuits; (7) neglect of financial responsibilities or professional obligations; (8) violation of an order of a court, including child support orders; (9) conduct that evidences current mental or emotional instability that may

On August 14, 2026, the NMSC and the Board filed Motions to Dismiss the Complaint. **Docs. 13, 14.** The NMSC focuses its Motion to Dismiss on the claims that (1) the SCRA does not apply to the NMSC as it is not a "licensing authority;" (2) the SCRA preserves state authority to conduct character and fitness evaluations, as it allows for background checks; and (3) the government lacks statutory standing as the Complaint fails to allege a "pattern or practice" or a "matter[] of great public importance." **Doc. 13 at 1-3.** The Board's Motion contends that it is also not subject to the SCRA as it is not a "licensing authority" under the SCRA's definition. ***See generally*** **Doc. 14.** In sum, the Court denies both Motions to Dismiss as the government has made sufficient factual allegations to state a claim upon which relief can be granted.

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits a court to dismiss a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint must have sufficient factual allegations that, if true, state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if a plaintiff pleads factual content that allows a court to reasonably infer that the defendant is liable for the misconduct alleged. *Id.* A court must assume the truth of all well-pleaded facts in the complaint and draw all

---

impair the ability to practice law; (10) conduct that evidences current drug or alcohol dependence or abuse that may impair the ability to practice law; (11) denial of admission to the bar in another jurisdiction on character and fitness grounds; (12) disciplinary action by a lawyer disciplinary agency or other professional disciplinary entity; (13) suspension of a lawyer's license by any entity, including suspensions for non payment of dues and failure to comply with mandatory continuing legal education requirements; (14) making of false statements, including omissions, on bar applications in any state; or (15) as otherwise determined by the board for just and good cause. An applicant shall supply additional information as requested by the Board. The Board may conduct further inquiry into an applicant's qualifications by conducting investigations, interviews, and hearings." ***Id.*** **¶¶ 64-65.**

reasonable inferences therefrom in the light most favorable to the plaintiff. *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007).

In ruling on a motion to dismiss, a court should disregard conclusory statements of fact and consider whether the factual allegations plausibly suggest the defendant is liable. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). While a court must draw all reasonable inferences in favor of the plaintiff, *Kay*, 500 F.3d at 1217, mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## I. The Court denies the NMSC's Motion to Dismiss.

The Court addresses the NMSC's Motion to Dismiss and explains, in turn, why the NMSC is a licensing authority under the SCRA, why the SCRA does not preserve the state's ability to broadly evaluate so-called "character and fitness" when this exceeds a basic background check, and why the government possesses statutory standing under the SCRA. Therefore, the Court concludes that NMSC's Motion to Dismiss should be denied.

### *A. The NMSC is a "licensing authority" under the SCRA.*

The NMSC's first contention is that they are not a licensing authority under the SCRA. **Doc. 13 at 1.** The NMSC has two main arguments supporting its interpretation that the NMSC is not a licensing authority under the SCRA: (1) the text of the SCRA only governs "licensing authorities" and the NMSC is not a "licensing authority" under the statutory definition; and (2) regardless of the text, there is a presumption against the federal government regulating state licensing. **Doc. 13 at 9-10.** The SCRA states that "[t]he term 'licensing authority means any State board, commission, department, or agency that---(A) is established in the State for the primary purpose of regulating the entry of persons into or the conduct of persons within, a particular

profession; and (B) is authorized to issue licenses." 50 U.S.C. § 4025(f)(3). Agreeing that the NMSC issues licenses, the NMSC focuses its arguments on the first element. ***Id.* at 1-2.**

The NMSC observes that the SCRA applies only if the NMSC was made for "the primary purpose" of regulating the entry of individuals into legal practice. **Doc. 13 at 1-2.** Emphasizing the word "the," the NMSC argues that "the" means only one or the sole purpose is allowable. **Doc. 22 at 4.** Also, the NMSC contends that "primary" means the main or most important purpose. **Doc. 13 at 11.** Therefore, NMSC concludes that, while its primary purpose may include issuing licenses, issuing licenses is not its singular objective but a mere part of its larger purpose to govern the judiciary. ***Id.* at 12.** On this logic, NMSC contends that it cannot be a "licensing authority" under the SCRA. The NMSC's interpretation does not sufficiently acknowledge the ordinary meaning of the statute's license portability section or the SCRA's statutory context. ***See* Doc. 22 at 8**.

It is true that the SCRA only applies when the entities' primary purpose is licensing. 50 U.S.C. §4025(f)(3). However, licensing and regulation of legal professionals is an integral part of the NMSC's main role. The NMSC claims "the primary purpose" implies only one purpose. But, this is too restrictive of a reading. The NMSC has "[t]he primary purpose . . . to oversee all aspects of the Judicial Department, including regulating the admission of persons into the practice of law and regulating the practice of law within the state." N.M. CONST. art. VI, § 3. In the very words of the New Mexico Constiution, "[t]he primary purpose" of the NMSC is to oversee the judiciary and this objective includes bar admission. This is not surprising. Other courts have found that law licensing is an inherent part of the judicial function. *Simons v. Bellinger*, 643 F.2d 774, 780 (D.C. Cir. 1980). Since "the primary purpose" of the NMSC substantially involves issuing bar licenses, it is irrelevant that its primary purpose encompasses the broader category of judicial oversight.

The Court contends that a reasonable person would understand that the term "the primary purpose" includes a part of that purpose as a matter of standard English usage. For example, breaking a car window counts as damaging a car, even though the window is a mere part of the car. The NMSC's logic goes the opposite way. The NMSC reasons that specifying the whole (the car or "the primary purpose") excludes a part (the window or the licensing that compromises part of the primary purpose). The whole includes the part. Therefore, the best reading of the SCRA, on its own terms, is that the NMSC is a "licensing authority" under § 4025a(f)(3).

Additionally, the NSMC focuses on the word "the" claiming this word was a deliberate congressional choice to exclusively connote a singular meaning. **Doc. 22 at 4.** Regardless of NMSC's arguments about the word "the," the Court's above conclusion that "the primary purpose" includes a part of that primary purpose also defeats this argument. The Court concludes that the NMSC's primary purpose does significantly involve regulating the legal profession and bar licensing.

Relatedly, some courts have found that similar language to "the primary purpose" indicates more than one purpose. Tracking the language of the SCRA but in the criminal context, the Fourth Circuit found that "the purpose" does not always mean the "sole purpose" but could include more than one purpose. *United States v. Sonmez*, 777 F.3d 684, 685, 689 (4th Cir. 2015) ("the purpose" does not mean the "sole purpose"). Not only can "the purpose" refer to more than one purpose, singular articles can imply plural meanings: "a" can mean "more than one." *Harris Corp. v. Sanyo North America Corp.*, 2000 WL 34204431 at *16 (N.D. T.X. 2000); *see also Abtox, Inc. v. Exitron Corp.,* 122 F.3d 1019, 1023 (Fed. Cir. 1997); *United States v. Naviwala*, 825 F.Supp. 3d 451, 495 (D. N.J. 2026). The point here is that, sometimes, minor words are used in statutes in variant ways. The extraction of the word "the" to alter the natural meaning of the SCRA and defy its context is

not consistent with the principles of textual interpretation. Here, the best reading of the SCRA is that "licensing authorities" can be entities which have the sole purpose of licensing or if licensing is part of the central duties that the entity performs.

Resisting this, the NMSC invokes the canon against surplusage. **Doc. 13 at 14.** NMSC contends that the two-part definition of "licensing authority" would be wasted text if it applies to the NMSC, an entity that apparently has other primary purposes that are not licensing. ***Id.*** The NMSC again stresses that only an entity that has the sole primary purpose of licensing is governed by the SCRA. ***Id.* at 12.**

In response to the surplusage argument, the natural inquiry is what parts of the SCRA's license transfer provisions would be surplusage if the Court adopted NMSC's reading. The answer: basically, the rest of it. If state supreme courts are not covered by the SCRA, the law would be unlikely to apply to law licenses anywhere. The NMSC's reading would only allow the government to enforce the law if a state created an entity solely for the purpose of issuing licenses (therefore, their definition would seem to exclude state supreme courts). The NMSC does not point to any state where their reading allows the government to enforce the SCRA. The Court has not found a state that could meet NMSC's test either. States seem to generally acknowledge that bar licensing is a part of the judicial function. *Simons v. Bellinger*, 643 F.2d 774, 780 (D.C. Cir. 1980). The SCRA would be unenforceable as to law licenses in most, if not all, of the country under NMSC's reading as the state judiciary typically possesses bar licensing powers. Therefore, while the NMSC raises surplusage concerns, their proposed interpretation worsens the supposed problem, appearing to make the SCRA law license portability provision not enforceable against any entity.

Here, the context further clarifies that NMSC is a licensing authority. As is apparent from the statute, Congress was trying to restrict the ability of states to deny military members and their spouses bar licenses. *See, e.g.,* 50 U.S.C. § 3902(1), § 4025a. If NMSC's reading is adopted, then Congress wrote a statute that seems to not be enforceable anywhere.

More broadly, courts should be cautious against falling under the name of textualism into a "literalism," devoid of context, without consideration of "common sense" or what "a reasonable observer would 'expect.'" *Biden v. Nebraska*, 600 U.S. 477, 512 (Barrett, J., concurring). "[M]eaning is lost by considering the words in isolation." *United States v. Scott*, 990 F.3d 94, 129 (2d Cir. 2021) (Menashi, J., concurring). Here, common sense and reading the text guides the Court to a clear answer: the Court determines that the best reading of the SCRA is that it covers the NMSC as a "licensing authority."

In addition, NMSC argues that there is a presumption against regulating state bar licensing authorities. **Doc. 13 at 14-15.** The Tenth Circuit holds that "any preemption inquiry begins with the presumption that federal law does not override 'the historic police powers of the States,' without the 'clear and manifest' intent of Congress." *Bradshaw v. American Airlines, Inc.*, 123 F.4th 1168, 1173 (10th Cir. 2024). However, Congress can preempt state law in areas of traditional state authority when Congress' intent to do so is present in express terms "or implied 'through its structure and purpose.'" *Id.* (quoting *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008)). In other words, Congress can override traditional state purposes if it says it is or if the context implies a purpose to preempt state law. While the SCRA does not necessarily have an express preemption clause as utilized in some statutes, the SCRA explicitly says that its licensing rules apply to "any State board, commission, department, or agency." 50 U.S.C. §4025a(f)(3). Functionally, this appears to be express preemption. Additionally, the "structure and purpose" of the SCRA make

clear that it is designed to regulate the states. *Bradshaw*, 123 F.4th at 1173. How else could the SCRA mandate that states recognize bar licenses besides regulating the states? Therefore, under either express or implied preemption, the Court finds the SCRA limits the state's traditional authority over bar regulation.

There is another reason why the NMSC's presumption argument does not work. The SCRA involves war powers. War powers are "broad and sweeping." *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.,* 547 U. S. 47, 58– 59 (2006) (quoting *United States v. O'Brien*, 391 U. S. 367, 377 (1968)). The Constitution allocates war powers to the federal government, rather than the state, across a multitude of clauses. Article I gives Congress the ability to "provide for the common defense" and "[t]o declare War, grant Letters of Marque and Reprisal and make Rules concerning Captures on Land and Water." U.S. CONST. Art. I, § 8, cl. 1, 11. Congress can also raise and support armies, create rules governing the armed forces, and regulate "the Militia." *Id.* Cl. 1, 10-16. Congress' other powers supplement their war powers authority through the Necessary and Proper Clause. *Id.* cl. 18. Considering these broad powers, the Supreme Court has ruled that states specifically and intentionally gave up their own war powers in establishing our basic constitutional structure. *Torres v. Texas Department of Public Safety*, 597 U.S. 580, 594 (2022). In *Torres*, the Supreme Court found that an employment law designed to protect veterans from adverse employment consequences was an exercise of Congress' war powers. *Id.* at 584, 592. The Supreme Court emphasized that states intentionally gave up their ability to control matters involving the military. *Id.* at 594. Similar to *Torres*, the SCRA also regulates employment rules governing military and their spouses, such as their professional licensing. While states have broad protections under our system of federalism, states often surrender authority to the federal government's exercise of war powers. Regulating employment for military purposes falls within

war powers here, just as it did in *Torres*. In sum, the NMSC's counterarguments are unpersuasive and the NMSC is a licensing authority under the SCRA.

### ***B. The SCRA limits state authority to conduct expansive character and fitness checks for military and their spouses***

Alternatively, the NMSC argues that the Complaint needs to be limited to areas where their practices conflict with the SCRA, primarily arguing for their view that the SCRA does not prevent character and fitness evaluations.[3] **Doc. 13 at 2.** Acknowledging that this argument would not reach the rest of the government's claims, the NMSC seeks dismissal of the character and fitness allegations in the Complaint, arguing that as a matter of law, the SCRA does not restrict character and fitness checks. **Doc. 13 at 15.** This is incorrect. While the SCRA does allow for states to conduct background checks, the best reading of this allowance for background checks imposes limits on a state's power to mandate more sweeping impositions such as "character and fitness" evaluations. 50 U.S.C. § 4025a(d). A background check typically is a limited exercise. Often, background checks include only a criminal history check. Usually, when Congress uses the term background check, it means this limited version. The same is true of New Mexico state laws, which seem to use background check as shorthand for a criminal background check. As Congress did not define the term "background check" in the SCRA, the Court will look to a variety of sources to

[3] The NMSC also tries to cast aside that its required course mandated prior to licensing conflicts with the SCRA. **Doc. 13 at 17-18.** The Court declines to limit the government's Complaint as NMSC requests. The NMSC provides no reason based on the text of the SCRA to permit a course required for licensing. ***Id.*** While the NMSC points elsewhere to the SCRA's allowance for background checks, it does not posit any textual basis here. Instead, the NMSC claims this course requirement is "reasonable." ***Id.* at 18.** This confuses the job of the Court. Under Rule 12(b)(6), the Court is weighing whether the government has stated a claim upon which relief can be granted. The Court is not judging which congressional choices are reasonable, this is a job for Congress. Here, the NMSC offers no legal reasons to justify this mandatory course and the Court does not see any either.

determine the ordinary meaning of the term, principally examining case law, legislative enactments at the state and federal level, and the Board's own publications regarding character and fitness. *See, e.g., Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1265 (10th Cir. 2014).

Courts tend to treat investigations into an individual's "good moral character" as distinct from a "background investigation." *Mocanu v. Mueller*, 2008 WL 154606 at *2 (E.D. P.A. 2008). Background checks are also referenced as distinct from broader investigations into psychological wellbeing or medical status. *Arriaga v. Dart*, 2026 WL 2166606 at *1 (7th Cir. 2026) (the plaintiff was required "to undergo a background check, a psychological evaluation, and a medical evaluation."). In fact, courts often use "background check" as shorthand for a criminal background check. *United States v. Tait*, 202 F.3d 1320 (11th Cir. 2000) ("Congress envisioned a background check when drafting the exception. This would require states to check for prior felonies before issuing firearms licenses."). Courts that reference a "background check" and character and fitness tend to frame the background check as distinct from character and fitness. *Martinez v. Singh*, 2021 WL 4988391 (Il. App. 2021) (quotation modified) (referencing "a character-and-fitness evaluation *or* a background check").

The Board's description of their character and fitness process, provided on their website, even seems to describe background checks as merely a part of the broader character and fitness evaluation. New Mexico Board of Bar Examiners, *Character & Fitness* (https://nmexam.org/more-application-items/character-fitness/). In the subsection "[w]hat does the Board review when evaluating Character and Fitness?" the Board identifies one subcomponent of character and fitness as "[f]ingerprinting and [c]riminal [b]ackground [c]heck." *Id.* Additionally, the Board mentions that there will be a "[s]taff [i]nvestigation to include internet searches and background checks." *Id.* However, the Board also lists numerous other components

of the character and fitness process that it differentiates from background checks. *Id.* The Board notes that the published "list is not [even an] exhaustive [one]" and, therefore, the list of additional items, which are not standard background checks in the Board's estimation, may be even longer than the extensive list the Board already provides. *Id.* Thus, even the Board's own published information seems to indicate that character and fitness is broader than a background check.

New Mexico state laws echo this. A New Mexico statute governing executive employees makes clear it covers "Background checks." NM Stat § 9-26-16 (2025). Within the statute, this "background check" involves fingerprinting and a criminal history check. *Id.* at § 9-26-16(A), (B). The statute then references the "background check" as a "criminal history background check." *Id.* § 9-26-16(B)(a). Thus, New Mexico state law seems to use the term "background check" to specifically refer to a criminal one or to a narrow investigation.

NMSC does not cite to any persuasive uses of background check that include character and fitness. While NMSC vigorously argues against the examples of background check that imply a limited endeavor to evaluate criminal history, NMSC does not show compelling counterexamples of its own. The question before the Court is whether the ordinary meaning of background check includes character and fitness. Even if there are some instances where background check refers to character and fitness, the meaning "that best matches the plain meaning of the defined term ordinarily controls." *Van Buren v. United States*, 593 U.S. 374, 404 (2021) (Thomas, J., dissenting); *Scott*, 990 F.3d at 129 (Menashi, J., concurring) ("the ordinary meaning of a phrase is just that: the meaning associated with the *ordinary* or *prototypical* use of the phrase rather than any meaning that is *linguistically possible*.").

Before it, the Court has not found good examples where Congress or a court has used the term "background check" to refer to a character and fitness evaluation, at least not enough to

outweigh the contrary evidence. Here, there are numerous examples where background checks appear to be limited inquiries, mostly into criminal backgrounds. On the other hand, it seems that background check rarely means an extensive character and fitness evaluation.[4] Therefore, as a matter of law under Rule 12(b)(6), the statute's reference to a background check only allows for a more minimally intrusive check than conducted by NMSC.

Assuming the term "background check" is ambiguous as NMSC suggests, "[t]o ascertain the better interpretation of this ambiguous term, we must focus on the context." *In re Kinney*, 5 F.4th 1136, 1142 (10th Cir. 2021). Here, the context is clear. As discussed above, the SCRA indicates strong limits on the state's ability to block military members and their spouses from obtaining licenses. To fulfill this purpose, it is not surprising that the SCRA would limit character and fitness. The applicants have already undergone the character and fitness process in another state. **Compl. ¶ 4.** Additionally, the overarching desire to limit bar licensing procedures is evident in the SCRA. As discussed, if the SCRA's main goal is to limit unnecessary time and effort spent obtaining bar licenses in a new state, it is not likely that Congress would add a loophole allowing such procedures if they are called "character and fitness" no matter how extensive the investigation is. Therefore, the context confirms that "background check" in the SCRA means something more limited than New Mexico's multi-part character and fitness process. In sum, NMSC has not shown that the government's allegations regarding character and fitness are legally insufficient under Rule 12(b)(6).

---

[4] That Congress did not explicitly cross-reference a criminal background check statute is not dispositive of what the ordinary meaning of "background check" is. NMSC does not provide any reasons as to why the lack of an explicit cross-reference should supplant the routine project that the Court engages in to discern ordinary meaning.

While there are differences as to what character and fitness includes depending on the state, the SCRA represents Congress' choice that one character and fitness evaluation is enough even if this displaces the requirements another state wants to impose on a bar license candidate. The policy arguments that the NMSC offers involving potential drawbacks to limiting character and fitness to a standard background check are valid considerations. **Doc. 22 at 11-12.** But these considerations are for Congress, not the Court. It is clear to the Court that Congress has weighed the importance of allowing a state to ensure high-quality attorneys against the need to support the military and their spouses in their economic endeavors and to simplify the process of relocation for service. The side Congress took is clear and it is not the place of the Court to second-guess Congress' well-reasoned determination. *See Kerry v. Din*, 576 U.S. 86, 97 (2015).

***C. The government has statutory standing to sue the NMSC under the SCRA.***

Last, the NMSC argues that the Complaint fails to state a claim under Rule 12(b)(6) by neglecting to meet the statutory standing requirements under the SCRA. **Doc. 13 at 2.** For the government to bring a suit under the SCRA, it can show (1) a pattern or practice of unlawful activity or (2) a matter of significant public importance in addressing the alleged violation. 50 U.S.C. § 4041(a). In line with other courts' conclusions, Title VII jurisprudence is instructive to the Court in deciding that the government has met its burden under Rule 12(b)(6). In that context, the Supreme Court has ruled that the government bears the initial burden to show "a prima facie case that such a[n illegal] policy existed." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 (1977). Statutory standing under the SCRA is satisfied if the government shows "that additional violations were plausible—and even likely—as a result of this practice . . . [the government] has sufficiently alleged a pattern or practice" for the motion to dismiss stage. *United States v. COPOCO Community Credit Union*, 2017 WL 57236 at *2-3 (E.D. Mich. 2017).

Here, the government has plausibly alleged, up to the Rule 12(b)(6) standard, that the NMSC violated the SCRA as to Lees by denying his license for possessing an LL.M. rather than a J.D. **Compl. ¶¶ 62-64.** Additionally, the government has plausibly alleged that the NMSC has conducted a pattern or practice of this unlawful behavior, since the NMSC identified their decision against Lees as based on a policy against providing bar licenses to military spouses if they do not meet state, rather than federal requirements. ***Id.* ¶ 47, 62-64.** Last, the government also plausibly alleges that the NMSC has a policy of improperly denying bar licenses based on character and fitness requirements. ***Id.* ¶ 68.** All of these suffice to meet the showing required at the motion to dismiss stage to state a claim.

Second, the Court finds there is considerable weight to the government's argument that this type of unlawful behavior is a matter of significant public importance. The NMSC minimizes the importance, emphasizing that only one individual (Liam Lees) is identified to have been harmed. It is not obvious that the litmus test for importance is so numerical. It is also not clear to what extent there are others affected by these issues and speculation at this stage would be improper. Assuming the facts in the Complaint bear out, there is a very plausible case that there is a matter of significant public importance here: a state body violates federal law, asserts that it has every right to engage in these violations, and even sends a letter to federal officials expressing a policy and intent to do so. The executive branch (of which the DOJ is a part) is a proxy of the public interest through democratic processes. The President is democratically elected, and the President, in turn, holds the prerogative to appoint an Attorney General of the Justice Department. While this is, of course, imperfect, there is no superior measure of public importance that the Court is aware of that would better inform how to evaluate whether the government has established statutory standing under this sort of test. Therefore, it is not unreasonable to associate the actions

of the executive branch with some reflection of what the public considers to be "a matter of significant public importance."

The Court also notes the possibility that establishing statutory standing for a matter of significant public importance under the SCRA is unreviewable and given to the discretion of the Attorney General of the Department of Justice. *United States v. Northside Realty Assocs.*, 474 F.2d 1164, 1168 (5th Cir. 1973) (noting that "the Attorney General must have wide discretion to determine whether an issue of public importance is raised"); *United States v. Taigen & Sons, Inc.*, 303 F. Supp. 2d 1129, 1138-39 (D. Idaho 2003) (citing other decisions that universally found the determination of a matter of public importance under the Fair Housing Act was unreviewable). At the very least, it seems like a highly discretionary determination. This makes sense. What factors should a court use to evaluate whether a lawsuit is a matter of substantial public interest? Does this not sound like a quintessentially political inquiry? Therefore, the Court finds that the government has statutory standing under the SCRA as it brings plausible allegations under Rule 12(b)(6) that the NMSC has conducted a pattern or practice in violation of the SCRA. The Court notes that the government makes strong arguments that it also meets the statutory standing bar for a matter of significant public interest but does not need to decide whether the government meets this standard as the Court has already found statutory standing has been established.

## II. The Court denies the Board's Motion to Dismiss.

The Court denies the Board's Motion to Dismiss. The NMSC is covered by the SCRA and the Board is a subsidiary acting based on the NMSC's authority. While the Board spends a lot of its briefing echoing the arguments made by the NMSC, the Court has already disposed of these arguments above. So, the Court focuses its analysis here on the sole remaining issue of whether the Board qualifies as a "licensing authority" under the SCRA even though it claims it does not

itself issue licenses. The Court concludes that the Board does qualify under the SCRA and denies the Board's Motion to Dismiss.

Primarily, the Board argues that (1) only the NMSC can issue a license, not the Board, and thus the government fails to state a claim as a matter of law under the SCRA; (2) the government fails to state a claim as it does not plausibly allege facts that show the Board is authorized to issue licenses; (3) the government's theory that the Board acts as an agent of the NMSC as in *United States v. Williams*, which found that an agent could be liable under the SCRA, is distinguishable; and (4) even if the Board's interpretation leads to "a seemingly anomalous application of [the] statute," the Court should not apply the absurdity doctrine.[5] ***See generally*** **Docs. 14, 24.**

Under § 4025a(f)(3), the SCRA's license portability requirements only apply to an entity that "(A) is established in the State for the primary purpose of regulating the entry of persons into or the conduct of persons within, a particular profession; and (B) is authorized to issue licenses." 50 U.S.C. § 4025a(f)(3). Part (A) is tough to dispute. It is hard to argue that the New Mexico Board of Examiners was established for any purpose but "regulating the entry of persons into" the legal profession. Simply looking at its name satisfies part (A).

Part (B) is more nuanced. The Board vigorously contends that it "is [not] authorized to issue licenses." 50 U.S.C. § 4025a(f)(3). Its responsibilities appear more administrative than the NMSC's under New Mexico rules. Rule 15-201(B) NMRA ("The board shall administer the process for admission, including determining whether an applicant has the necessary qualifications and meets the requirements prescribed by these rules, recommending an applicant's admission to the Supreme Court, and other steps for finalizing an applicant's licensure as may be delegated by

---

[5] The Court does not apply the absurdity doctrine and only uses traditional contextual interpretative techniques, so it does not deal with this fourth argument.

the Supreme Court."). This New Mexico rule does seem to suggest the Board has some authority to "finaliz[e] an applicant's licensure" if so delegated. *Id.*

While the Board disavows the power to make final decisions about licenses, the facts alleged by the government depict a different story. The government alleges that Lees submitted applications, invoking SCRA license portability, by email and using the Board's online application portal. **Compl. ¶¶ 37-42.** In response, the Board told Lees that it "did not consider his online application 'complete' because he did not hold a juris doctor or bachelor of laws and letters degree." ***Id.* ¶ 42.** Then, the Board did not submit Lees' application to the Supreme Court. ***Id.* ¶ 43.** A statement that an application is "incomplete" accompanied by not passing the application along to the NMSC looks like a rejection of the application, the completion of a decision about Lees' ability to receive a bar license in New Mexico. If the Board has the power to reject applications, the Board is exercising the authority to "issue licenses" under § 4025a(f)(3). At the motion to dismiss stage, the government has alleged enough facts that suggest that the Board has discretion to withhold licenses. While the Board repeatedly asserts that it has no authority to issue licenses, it does not seem to engage with these allegations.

The Board's reading would mean that a state supreme court can delegate the power to reject applicants with impunity under the SCRA if these subordinate authorities allegedly may not grant, but only deny, licenses. This plainly conflicts with the SCRA and its purpose. The entire point is to prevent states from denying licenses to servicemembers and their spouses. It would conflict with this context to permit skirting the law this way. The Board is covered by § 4025a(f)(3) as a matter of law and the government has alleged sufficient facts to show that the Board may act as an arbiter of whether to "issue [a] license[]" or not. § 4025a(f)(3).

Additionally, the Board may be liable as an agent of the NMSC. Another court dealing with the SCRA found that an agent is liable under the statute when the principal is liable under the statute (here, the NMSC is liable and the Board's authority is derived from the NMSC's delegation). While *United States v. Williams* pertained to a housing dispute under a distinct section of SCRA, its reasoning is still instructive, and it is worth noting that it found an agent liable under the SCRA. *United States v. Williams*, 2013 WL 596473 at *5 (E.D. V.A. 2013). *Williams* determined that "agents will be liable for their own unlawful conduct, even where the actions were at the behest of the principal." *Id.* (quoting *Jeanty v. McKey & Poague, Inc.,* 496 F.2d 1119, 1120-21 (7th Cir. 1974)). It is worth noting that agents are also liable under general Title VII law. *Cuesta v. Texas Dept. of Criminal* Justice, 805 F. Supp. 451, 455 (W.D. T.X. 1991). Regardless of the conclusion of this agency line of reasoning, the government states a claim under Rule 12(b)(6) against the Board as it makes non-conclusory allegations that the Board acts as a licensing authority under the SCRA and that the Board has violated those legal obligations by failing to honor its license portability requirements.

**CONCLUSION**

The Court finds that the government has met the standards of Rule 12(b)(6) and plausibly asserted factual allegations supporting relief as a matter of law.

**IT IS THEREFORE ORDERED** that Defendants' Motions to Dismiss **(Docs. 13, 14)** are **DENIED**.

/S/
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE